UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE WEIS COMPANY, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | Case No.  4:21-cv-00820-SRC |
| | ) | |
| AMERICA 9 CONSTRUCTION, LLC, | ) | |
| | ) | |
| Defendant(s). | ) | |

**<u>Memorandum and Order</u>**

America 9 hired George Weis Company as a subcontractor on a movie-theater remodeling project.  In February 2020, the parties signed the subcontractor agreement, which contemplated George Weis as one of several subcontractors.  However, the coronavirus pandemic interrupted the remodeling project and caused America 9 to complete the project on its own—without the help of George Weis—so George Weis filed this lawsuit.  In response, America 9 filed a motion to compel arbitration.  Strangely, the parties agree that a valid arbitration agreement exists and that the claims at issue in this case fall within that agreement.  George Weis, the plaintiff, only opposes the motion on the ground that the contracts governing their relationship require mediation before binding arbitration, even though George Weis brought the lawsuit in the first place.  Because an arbitrator must decide whether George Weis has a valid procedural defense to arbitration, the Court grants America 9's motion and stays the case pending arbitration.

**I.      Background**

George Weis and America 9 Construction signed a master subcontractor agreement in February 2020.  Doc. 7-3 at p. 10.  This contract set out the rules that would govern their

relationship as they got to work remodeling a movie theater in St. Charles, Missouri.  Doc. 7-2 at p. 1.  America 9 was the general contractor under the agreement, and, as the primary contractor, was a party to a general contract with the owner of the development, P-Corn Acquisitions.  *Id.*  The parties agree that both the subcontractor agreement and the general contract determine the parties' dispute-resolution obligations in this action because the subcontractor agreement incorporates and references portions of the general contract.  Doc. 13 at p. 3; Doc. 12 at p. 2.

In May 2020, not long after the parties had started the remodeling project, the coronavirus pandemic interrupted work on the project.  Doc. 4 at p. 4; Doc. 7 at p. 2.  George Weis alleges that America 9 breached its contract by only partially paying for the work George Weis performed on the project.  Doc. 4 at pp. 4–5.  George Weis also claims America 9 breached because America 9 decided to complete the project using its own resources.  *Id*. at p. 5.  In sum, George Weis believes that America 9 "breached the contract by terminating it, without cause, and by failing to pay for the work performed."  *Id.* at p. 6.

The master subcontractor agreement between George Weis and America 9 contains this arbitration clause:

> Should any dispute arise respecting the provisions of this subcontract, a Purchase Order or of the true meaning of the drawings or specifications it shall be decided by binding arbitration.  Arbitration shall be the sole remedy for dispute resolution . . . .  If alternative dispute resolution, including, without limitation, arbitration and mediation, is provided for in the General Contract for a project, any dispute arising between [A9] and [George Weis] under the subcontract and its related Purchase Order, including the breach thereof, shall be settle [sic] by such alternative dispute resolution procedures in the manner provided for in the General Contract.  [George Weis] consents to be joined in an arbitration proceeding involving [George Weis]'s work.

Doc. 7-3 at p. 8.

The alternative dispute resolution "provided for in the General Contract" for the project states: "For any Claim subject to, but not resolved by, mediation pursuant to Article 15 of AIA

2

Document A201-2017, the method of binding dispute resolution shall be as follows:  Arbitration pursuant to Section 15.4 of AIA Document A201-2017."  Doc. 7-2 at p. 6.

The parties have each submitted versions of AIA Document A201-2017 which differ substantially in their language at Section 15.4 discussing whether mediation is a condition precedent for arbitration.  The version of AIA document A201-2017 that George Weis submitted states that "[c]laims. . .shall be subject to mediation as a condition precedent to binding dispute resolution." Doc. 12-1 at p. 2.  On the other hand, the version that America 9 claims applies to this specific agreement states "[c]laims. . .may be subject to mediation if [the parties] agree to mediate."  Doc. 13-1 at p. 42.

This past summer, George Weis sued America 9 in St. Charles County Circuit Court for breach of contract.  Doc. 4.  A month later, America 9 removed the case, Doc. 1, invoking this Court's diversity jurisdiction and promptly moving to compel arbitration, Doc. 6.  The parties have fully briefed the matter and filed exhibits containing the contracts and related documents at issue in the case.

**II.    Standard**

"Arbitration agreements are governed by the Federal Arbitration Act ("FAA")."  *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001).  The FAA mandates broad enforcement of arbitration provisions:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district

3

> court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

The FAA establishes a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Accordingly, "courts must place arbitration agreements on an equal footing with other contracts" and enforce them according to their terms. *Id.* However, "[a] matter should not be sent to arbitration unless there is a valid agreement to arbitrate and the underlying dispute falls within the scope of that agreement." *Northport Health Servs. of Ark., LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019) (quoting *Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 433 (8th Cir. 1998)). "While 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[,] . . . a party who has not agreed to arbitrate a dispute cannot be forced to do so.'" *Id.* (quoting *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001)).

Before compelling arbitration, a district court must determine: "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR-ARK, LLC,* 841 F.3d 781, 783–84 (8th Cir. 2016) (quoting *Faber v. Menard, Inc.*, 367 F.3d at 1048, 1052 (8th Cir. 2004)). The Court, rather than the arbitrator, decides these substantive questions of arbitrability unless the parties "clear[ly] and unmistakabl[y]" delegated that issue to the arbitrator. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citations omitted). In contrast, "arbitrators should decide whether the procedural prerequisites for arbitration ha[ve] been met." *Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers, Shopman's Loc. 493 v. EFCO Corp. & Const. Prod.*, 359 F.3d 954, 956 (8th Cir. 2004) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79,

4

85–87 (2002)).  These procedural arbitrability issues include waiver, delay, and like defenses to arbitrability.  *Howsam*, 537 U.S. at 84.  Because "arbitration is a matter of contract," state-law contract principles govern the validity of an arbitration agreement; an arbitration agreement may be "invalidated by generally applicable contract defenses."  *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (citations omitted).  "If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration."  *Id.* (citing *Faber*, 367 F.3d at 1052).

The Eighth Circuit has instructed that a motion to compel arbitration should be "analyzed under a standard akin to [a motion for] summary judgment."  *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741 (8th Cir. 2014).  Accordingly, the Court must view the evidence in the light most favorable to the non-moving party, resolving all factual disputes in their favor.  *Id.* at 743.  The Court may not compel arbitration where there remains any genuine issue of material fact as to whether a valid arbitration agreement exists.  *Id.*

**III.     Discussion**

Normally when considering a motion to compel arbitration, the Court first determines whether a valid arbitration agreement exists and whether the claims at issue in the case fall within that agreement.  *Robinson*, 841 F.3d at 783–84.  But in this case, the parties agree on those things.  George Weis does not dispute that the general contract, Doc. 7-2, and the master subcontractor agreement, Doc. 7-3, govern its relationship with America 9 in this matter.  *See* Doc. 12.  George Weis also does not challenge the validity of the arbitration provisions contained in these contracts nor whether its claims fall within the scope of the provisions.  *Id.* George Weis only opposes America 9's Motion to Compel on the ground that the contracts governing their relationship require mediation before binding arbitration.  *Id.* at pp. 2–3.

5

Because America 9 has not attempted to mediate this dispute, George Weis says that America 9 cannot force it to arbitrate. In other words, George Weis, who filed the lawsuit in the first place, claims that mediation is a condition precedent to arbitration.  The Court notes the inherent contradiction of George Weis's position.  If George Weis does not contest the validity of the mediation and arbitration agreements under the contracts, George Weis should have followed those agreements before filing a lawsuit.  Regardless, for the reasons discussed below, the Court does not need to evaluate the merits of this defense to arbitration because the defense will instead be evaluated by the arbitrator.

In support of its argument, George Weis does not cite a single case and relies entirely on a provision in its submitted version of American Institute of Architects Document A201-2017, the general conditions of the general contract.  The parties agree that the general contract incorporates by reference some version of this document.  Doc. 7-2 at p. 6.  However, both parties have submitted to the Court substantially different versions of the general conditions.  George Weis submitted a sample version of the document, while America 9 submitted an amended version that it claims the general contract actually incorporates.  *Compare* Doc. 12-1 at p. 2 ("Claims. . .shall be subject to mediation as a condition precedent to binding dispute resolution.") *with* Doc. 13-1 at p. 42 ("Claims. . .may be subject to mediation if [the parties] agree to mediate.").

If the language in America 9's version of the document governs, the Court need go no further.  In that case, the document does not contain any language that would provide George Weis a condition-precedent defense to arbitration.  However, if the language in George Weis's version governs, then it may have a condition-precedent defense, assuming that George Weis's filing of this lawsuit does not constitute a waiver of the condition-precedent.  Even though the

6

Court doubts that the general contract incorporates George Weis's form version of the general conditions, the Court will assume—without deciding—that it has. Even drawing this unlikely assumption in George Weis's favor, the Court still must compel arbitration because an arbitrator must decide the procedural arbitrability questions of whether a mediation-as-condition-precedent-to-arbitration clause exists, and, if it does, whether and how to enforce it.

Unlike the "substantive questions" of arbitrability, like the validity of an arbitration clause or whether it applies to the underlying dispute, which are for the courts to decide, the arbitrator determines questions of procedural arbitrability like whether a condition precedent to arbitration exists or has been satisfied. *Howsam*, 537 U.S. at 85; *El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 846 (8th Cir. 2001) ("[T]he question whether the contractual conditions precedent were met is a question of procedural, rather than substantive, arbitrability.").

The Eighth Circuit has not yet ruled squarely whether a contract provision requiring mediation as a condition precedent to arbitration presents a question of procedural or substantive arbitrability. But the Supreme Court and the court of appeals have provided a test for determining whether a question of arbitrability is procedural or substantive. Procedural questions are those "which grow out of the dispute and bear on its final disposition." *Howsam*, 537 U.S. at 84. These issues include waiver, delay, or similar defenses to arbitrability. *Int'l Ass'n of Ironworkers*, 359 F.3d at 956. In summary, the Supreme Court has held that "arbitrators should decide whether the procedural prerequisites for arbitration ha[ve] been met." *Id*. On the other hand, the Court must also consider whether the provision "defines the scope of the matters the parties previously agreed to arbitrate." *Local 38N Graphic Commc'ns Conference v. St. Louis Post-Dispatch, LLC*, 638 F.3d 824, 826 (8th Cir. 2011). If it does, then the question is one

7

"of substantive arbitrability within the exclusive discretion of the courts." *Id.* If it does not, the question is procedural and for the arbitrator to decide. *Id.*

The Court finds the mediation-as-condition-precedent provision of AIA Document A201-2017 comparable to many other conditions precedent that the court of appeals has found procedural. For example, the court of appeals has found that failure to comply with pre-arbitration steps in a grievance procedure laid out by a contract was an issue of procedural arbitrability for the arbitrator to decide. *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 748–49 (8th Cir. 1986). Similarly, in *El Dorado School District No. 15 v. Continental Casualty Co.*, the court acknowledged that the contractual requirement that the school district needed to first submit a claim to an architect as a condition precedent to arbitration was a procedural question for the arbitrator's decision. 247 F.3d at 846. And finally, in *International Ass'n of Ironworkers*, the court held that a timeliness-of-notice provision governing arbitration likewise presented a procedural question for the arbitrator. 359 F.3d at 955–57. Each of these cases dealt with contractual conditions precedent to arbitration. Importantly, these procedural conditions precedent did not determine whether the underlying claim was arbitrable—that is, whether the dispute was arbitrable at all. No, these conditions precedent were procedural exactly because they constituted steps that a party had to take in order to arbitrate an *otherwise arbitrable claim*.

The parties do not dispute that, if this contract dispute had previously been mediated, then arbitration would be required, and the parties agree on the ultimate arbitrability of this contract dispute. For this reason, the Court finds that the mediation-as-condition-precedent provision does not define "the scope of the matters the parties previously agreed to arbitrate." *Local 38N Graphic Commc'ns Conference*, 638 F.3d at 826. This provision has no bearing on the "gateway

8

questions of arbitrability" that a court must decide, like whether a party has agreed to arbitrate in the first place. *Int'l Ass'n of Ironworkers*, 359 F.3d at 956 (internal quotation marks omitted); *see also El Dorado School Dist. No. 15*, 247 F.3d at 846.

George Weis's only defense to arbitration is procedural. Because George Weis has presented no issue to the Court of substantive arbitrability, the Court ends its inquiry and compels arbitration. The arbitrator will decide which version of American Institute of Architects Document A201-2017 governs in this case and if George Weis has a valid procedural defense to arbitration.

When the Court compels arbitration, "[t]he [Federal Arbitration Act] generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it." *Green v. Super Shuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (citing 9 U.S.C. § 3) (stating the district court "shall...stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). In *Green*, however, the Court recognized that district courts sometimes rely upon "a judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Id.* at 669–70. Because George Weis has raised a procedural defense to arbitration of which the Court has not weighed the merits, the Court stays the action pending arbitration.

**IV.     Conclusion**

The Court grants America 9 Construction, LLC's [6] Motion to Compel Arbitration and stays this matter pending arbitration. The parties must provide a joint status report regarding the progress of arbitration proceedings no later than December 3, 2021, and must also submit a

9

notice updating the Court no later than 10 days following the conclusion of arbitration proceedings.

      The Court directs the Clerk of Court to administratively close this matter.  The parties must continue to comply with all orders of the Court, provide status updates to the Court, and notify the Court of any development that may affect the stay of this matter.

So Ordered this 29th day of October 2021.

                                        _____
                                        **STEPHEN R. CLARK**
                                        **UNITED STATES DISTRICT JUDGE**